694 So.2d 266 (1995)
Charles FONTENETTE
v.
McDERMOTT, INC.
No. 95 CA 0190.
Court of Appeal of Louisiana, First Circuit.
October 6, 1995.
*268 Raymond C. Vinet, Sr., Vinet & Vinet, Baton Rouge, for Plaintiff-Appellant Charles Fontenette.
J. Louis Gibbens, Gibbens, Blackwell & Stevens, New Iberia, for Defendant-Appellee McDermott, Inc.
Before SHORTESS, PARRO and KUHN, JJ.
PARRO, Judge.
In this worker's compensation claim, Charles Fontenette ("Fontenette") appeals from the hearing officer's which denied his claim and ordered that any right that Fontenette had to worker's compensation benefits was forfeited pursuant to LSA-R.S. 23:1208. For the following reasons, this court affirms in part, reverses in part, and vacates in part.

Facts and Procedural History
Fontenette was employed by McDermott, Inc. ("McDermott") as a rigger when he sustained a work-related accident on December 7, 1988. McDermott does not dispute that Fontenette sustained severe physical injuries to his pelvis and left arm as a result of this accident. Because of his resulting physical limitations, McDermott paid weekly compensation benefits to Fontenette in the amount of $178.33 from the time of the accident to the beginning of January, 1990. In January of 1990, his weekly benefits were reduced to $156.57 based on Fontenette's receipt of disability retirement benefits. At the time of trial, he was receiving worker's compensation benefits for his physical condition. In fact, Fontenette continued to receive weekly compensation benefits at this rate and medical expenses until the hearing officer rendered judgment in this matter on July 28, 1994.[1]
In mid-1992, Fontenette filed this action against McDermott for worker's compensation benefits, penalties, and attorney's fees based primarily on a mental disability allegedly resulting from the December, 1988 accident. In his disputed claim form for compensation, Fontenette did not take issue with his weekly benefits entitlement and simply stated that he was entitled to continue receiving weekly benefits then being voluntarily paid by McDermott, in the amount of $156.57. In his claim data form, Fontenette identified the bona fide dispute as pertaining to McDermott's refusal to pay medical bills, to authorize psychological and psychiatric treatment, and to send medical records and reports.[2]
As to Fontenette's alleged mental impairment, the hearing officer concluded that Fontenette had not sustained a head injury and had no cognitive impairment as a result of the accident at McDermott and entered judgment dismissing Fontenette's claim for worker's compensation benefits. Based on his findings that Fontenette and his wife violated the provisions of LSA-R.S. 23:1208(A) by making false statements for the purpose of receiving worker's compensation benefits, the hearing officer held that Fontenette had forfeited any right to worker's compensation benefits in accordance with LSA-R.S. 23:1208(E) and referred Fontenette's claim to the director of the Louisiana Office of Worker's Compensation for consideration for the imposition of civil penalties against Fontenette *269 and his wife in accordance with LSA-R.S. 23:1208(D).
Fontenette appeals the judgment contending that the hearing officer erred in its credibility determinations regarding Fontenette, his wife, and the medical experts; in failing to find that Fontenette suffered a head injury which caused his mental problems; in terminating Fontenette's medical and indemnity benefits regarding his physical injuries; and in failing to award penalties and attorney's fees for the non-payment of certain medical expenses.

Standard of Review
In a worker's compensation case, as in other civil cases, the appellate court's review of facts is governed by the manifest error or clearly wrong standard. Smith v. Louisiana Department of Corrections, 93-1305 (La. 2/28/94), 633 So.2d 129, 132; Kennedy v. Security Industrial Insurance Company, 623 So.2d 174, 175 (La.App. 1st Cir.), writ denied, 629 So.2d 389 (La.1993).
A court of appeal may not overturn a judgment of a hearing officer absent an error of law or a factual finding which is manifestly erroneous or clearly wrong. See Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880, 882, n. 2 (La.1993). Before an appellate court may reverse a factfinder's determinations, it must find from the record that a reasonable factual basis does not exist for the findings and that the record establishes that the findings are clearly wrong (manifestly erroneous). Id. at 882; see Mart v. Hill, 505 So.2d 1120, 1127 (La.1987).
Where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart v. State, Through Department of Transportation and Development, 617 So.2d at 883. In other words, when findings are based on a credibility determination, a factfinder's decision to credit the testimony of one of two or more witnesses can virtually never be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840, 845 (La.1989).

Credibility Determinations
Regarding the hearing officer's decision to discredit the testimony of certain witnesses, Fontenette argues that the hearing officer erred in his determination regarding the veracity of Fontenette and his wife and in giving greater weight to the testimony of the examining physicians than to that of the medical records of his treating physicians.
The hearing officer after hearing the testimony, observing the demeanor of the witnesses, and reviewing the voluminous record in this case, concluded that the trial testimony of Fontenette and his wife was completely incredible. In his written reasons for judgment, the hearing officer stated:
In this hearing officer's opinion, Fontenette did not make an appearance before the Court, he staged a performance! The stories told by these two people are not only improbable, they fly in the face of accepted medical knowledge.
The hearing officer not only concludes that the claimant and his wife are lying, he believes that they are lying for the purpose of receiving workers' compensation benefits. Having found that they have, in the hearing officer's opinion violated the provision of Section 1208 of the statute, it is recommended that Fontenette be disqualified from the receipt of any workers' compensation benefits of any type, and also it is recommended to the Director of the LOWC that civil fines be imposed upon both Fontenette and his wife for bringing this claim....
The hearing officer obviously made a conscious decision that the Fontenettes were not being truthful about Fontenette's mental condition and the cause of any such condition.
In determining whether the worker has discharged his burden of proof regarding his alleged disability, the hearing officer should accept as true a witness's uncontradicted testimony absent circumstances casting suspicion on the reliability of this testimony. Bruno v. Harbert International, Inc., 593 So.2d 357, 361 (La.1992). The factfinder's determinations as to whether the worker's testimony is credible and whether *270 the worker has discharged his or her burden of proof are factual determinations not to be disturbed on review unless clearly wrong or absent a showing of manifest error. Gonzales v. Babco Farm, Inc., 535 So.2d 822, 824 (La.App. 2nd Cir.), writ denied, 536 So.2d 1200 (La.1988).
The record in this case is replete with evidence casting suspicion on the reliability and truthfulness of Fontenette's testimony regarding his alleged mental condition. Therefore, this court concludes there was a reasonable factual basis to support the hearing officer's determination that Fontenette's testimony, as well as that of his wife, was completely incredible. Based on our review, this court further finds that the hearing officer's decision to discredit the testimony of the Fontenettes was not manifestly erroneous.
Fontenette also complains about the factfinder's decision to give greater weight to the testimony of McDermott's medical experts rather than to the evidence pertaining to his own medical experts. Generally, the diagnosis of a treating physician is entitled to more weight than the diagnosis of physicians consulted for the purpose of litigation only. Hall v. McDonald Insulation, 537 So.2d 328, 331 (La.App. 1st Cir.1988). However, due to the allocation of the factfinding function of the hearing officer and the hearing officer's opportunity to evaluate a mixture of deposition and live testimony, great deference is accorded to the hearing officer's factual findings. Sistler v. Liberty Mutual Insurance Company, 558 So.2d 1106, 1111 (La.1990). Where the testimony of expert witnesses differ, it is the responsibility of the trier of fact to determine which evidence is most credible. Id. The hearing officer is granted considerable discretion in evaluating expert testimony. Lirette v. State Farm Insurance Company, 563 So.2d 850, 853 (La. 1990). The factfinder's decision to accept the testimony of one expert over the conflicting testimony of another expert can never be manifestly erroneous. See Rosell v. ESCO, 549 So.2d at 845.
McDermott presented the deposition testimony of its three medical experts which conflicted somewhat with the medical records prepared by Fontenette's "treating physicians" regarding Fontenette's mental condition and the cause of any such condition. In addition to failing to produce his "treating physicians" for testimony at the hearing in this matter, the record is devoid of the deposition testimony of any of his treating physicians. Rather, Fontenette opted to prove his case by simply introducing certain medical records. Apparently, the hearing officer determined that the testimony and medical opinions of Dr. Susan Andrews, Dr. Donald Adams and Dr. Rennie Culver (that there was no relationship between the accident and Fontenette's behavior) were more credible than the medical evidence produced by Fontenette in support of his claim. In light of the evidence in this case, we are unable to conclude that the hearing officer's decision to accept the testimony of the non-treating physicians over the conflicting evidence introduced by Fontenette was manifestly erroneous.

Termination of Benefits Pursuant to LSA-R.S. 23:1208
The hearing officer found, after a trial on the merits, that Fontenette and his wife violated LSA-R.S. 23:1208(A) by making false statements for the purpose of receiving worker's compensation benefits and that Fontenette forfeited any right to worker's compensation benefits pursuant to LSA-R.S. 23:1208(E). The version of LSA-R.S. 23:1208 referred to by the hearing officer in his judgment did not take effect until June 22, 1993, which was clearly after the date of the accident and alleged injury in this case. The jurisprudence is clear that the law in effect at the time of the injury governs. Freeman v. Poulan/Weed Eater, 93-1530 (La. 1/14/94), 630 So.2d 733, 738; Bruno v. Harbert International, Inc., 593 So.2d at 360. Therefore, we conclude that the hearing officer erred as a matter of law in applying the current version of LSA-R.S. 23:1208.
At the time of Fontenette's accident and alleged injury, LSA-R.S. 23:1208 provided:
If, for the purpose of obtaining or defeating any benefit or payment under the *271 provisions of this Chapter, any person either for himself or any other person, wilfully makes a false statement or representation, he shall be fined not more than five hundred dollars or imprisoned for not more than twelve months, or both. Any employee convicted under this section shall in addition cease to receive any compensation under this Chapter.
To prevent an employee from receiving compensation, this provision required that an employee's false statement or representation was wilfully made "for the purpose of obtaining... any benefit or payment" under the Worker's Compensation Act and the employee was "convicted" of violating the provision. Lavergne v. Lake Charles Memorial Hospital, 625 So.2d 1098, 1101 (La.App. 3rd Cir. 1993), writ denied, 93-2756 (La. 1/7/94), 631 So.2d 451.
The word "convicted" connotes a finding of guilt in a criminal trial. See LSA-C.Cr.P. art. 934(3); Black's Law Dictionary 301 (5th ed. 1969). This court is mindful that criminal laws are to be construed stricti juris. State v. Farris, 412 So.2d 1039, 1041 (La. 1982). Thus, in the absence of any record evidence that Fontenette was convicted under former LSA-R.S. 23:1208 in a court of proper jurisdiction, the hearing officer was without legal authority to bring about the cessation of Fontenette's worker's compensation benefits based solely on his finding that Fontenette and his wife made false statements for the purpose of receiving worker's compensation benefits. Therefore, we must consider whether there existed some other basis for the hearing officer's denial and dismissal of Fontenette's claim for disability benefits.

Head Injury Resulting in Mental Condition
The evidence in this case centered around Fontenette's claim for worker's compensation benefits based on mental impairment. In light of the evidence presented, the hearing officer concluded that Fontenette had not sustained a head injury and had no cognitive impairment as a result of the accident at McDermott. Fontenette contends that the hearing officer erred in finding that the plaintiff did not sustain a head injury which caused his mental problems.
Although Fontenette contends that he sustained a head injury as a result of the December 7, 1988, accident, the record contains conflicting testimony and evidence regarding the issue of whether he suffered a head injury as a result of that accident. Without overlooking the fact that portions of the record provided some support for Fontenette's argument that he suffered a head injury which produced his alleged mental condition, this court recognizes there was an abundance of testimony and evidence (determined to be credible by the hearing officer) supporting McDermott's position that Fontenette did not suffer a head injury and that the December, 1988, accident did not cause Fontenette's alleged mental condition.
Regarding the findings as to the reasons for Fontenette's alleged mental condition, the hearing officer was called upon to make several credibility determinations with regard to the lay and expert testimony and evidence. After a thorough review of the entire record and considering the credibility determinations by the factfinder, this court finds that there was a reasonable factual basis to support the hearing officer's determinations that Fontenette did not sustain a head injury and had no cognitive impairment as a result of the December, 1988, accident. Based on our review, this court further finds that the record established that the factual determinations of the hearing officer were not manifestly erroneous.[3] Thus, Fontenette has not established that he is entitled to recover any additional worker's compensation benefits as a result of his alleged mental impairment.[4]

*272 Decree

For the foregoing reasons, that portion of the judgment dismissing Fontenette's claim for compensation benefits based on mental impairment is affirmed,[5] and that portion pertaining to LSA-R.S. 23:1208 is reversed and vacated. Costs of this appeal are assessed against McDermott.
AFFIRMED IN PART, REVERSED IN PART AND VACATED IN PART.
KUHN, J., concurs and assigns reasons.
SHORTESS, J., dissents in part and concurs in part with reasons.
KUHN, Judge, concurring.
I concur. If the findings of the hearing officer were limited to the conclusion that no additional benefits were due, there would be no manifest error nor error of law. Though there is ample evidence that plaintiff suffered certain psychological injury as a result of the accident, there is also evidence to the contrary. Legal error of the hearing officer brought about a conclusion that plaintiff was not entitled to any benefits. The only issue considered in this appeal is the claim for benefits for mental impairment.
SHORTESS, J., dissents in part and concurs in part with reasons.
SHORTESS, Judge, dissenting in part and concurring in part.
On December 7, 1988, about 5:00 p.m. while working for defendant at its Amelia plant, plaintiff was struck in the back by a large crane which threw him into a large tool box. Plaintiff suffered crushing injuries to his back and pelvis, and his arm was broken when the operator moved the crane away from the tool box. He was initially treated at Lakewood Hospital and later was taken to Ochsner Foundation Hospital and treated for his multiple serious fractures and other physical and mental injuries. He was receiving worker's compensation benefits when his case was heard by the hearing officer.
The totality of the record convinces me that the hearing officer was intemperate in his treatment of this case. He found plaintiff's evidence to be "incredible," which triggered sanctions pursuant to LSA-R.S. 23:1208(A). To me, this was simply a hotly contested case. The most weighty evidence (by volume and by quality) is on plaintiff's side. The medical evidence used by the hearing officer came from a neurologist, a psychologist, and a non-treating psychiatrist. Plaintiff's medical evidence came from several treating psychiatrists whose opinions are legally entitled to greater weight. In my opinion, the hearing officer committed legal and reversible error in adopting the non-treating expert opinions in this case.
For example, contained in the extremely voluminous exhibit P-1 (plaintiff's medical records from Ochsner) is the following quote which I have taken directly from the Ochsner Foundation Hospital's medical records, notes and consultant reports, showing Dr. Thomas R. Olmsted's January 17, 1990, handwritten report. Dr. Olmsted is a psychiatrist and plaintiff's primary physician. The report in pertinent part, states:
Mr. Fontenette's affect is improving; however, other symptoms are about the same. It is clear that he has organic impairment and further description by neuro-psych testing will more fully describe his impairment. He meets criteria for Post-Traumatic Stress Disorder and probably Organic Personality. I am not optimistic about his return to productive employment, but he will need intensive follow-up.
This opinion is fortified by an eight-page psychiatric evaluation in the record dated March 14, 1990, and also by a disability evaluation of Dr. Gail C. Brady, dated October 23, 1991, all a part of P-1.
I dissent from the majority holding on the mental impairment injury issue but whole-heartedly concur with all the other holdings which, in effect, should reinstate the compensation *273 benefits plaintiff was receiving at the time of trial.
I respectfully dissent in part and concur in part.
NOTES
[1] In addition to weekly compensation benefits, McDermott had paid $134,732.48 in medical expenses, $1,285 in physical therapy expenses, and $8,669.42 in rehabilitation expenses at the time of trial.
[2] Since Fontenette was receiving weekly compensation benefits in an amount agreeable to him when this claim was filed, Fontenette would have had no reason to raise the issue of his entitlement to these benefits on account of his physical condition.
[3] In light of our conclusion regarding Fontenette's alleged head injury and mental condition, we find no manifest error in the hearing officer's refusal to award penalties and attorney's fees.
[4] This conclusion in no way affects Fontenette's right to receive any worker's compensation benefits that he may be legally entitled to on account of his physical condition resulting from the December, 1988, accident. Although Fontenette's entitlement to benefits for his physical condition is not properly before this court on appeal, it seems that the disability payments Fontenette was receiving for his physical condition would continue in light of our holding that LSA-R.S. 23:1208 is inapplicable under the facts of this case.
[5] We reach this conclusion based on the hearing officer's reasons for judgment which were confined to findings pertaining to Fontenette's claims relating to mental impairment.