hSTEVEN R. PLOTKIN, Judge.
This workers’ compensation case involves two pivotal issues regarding the interpretation of the pre-1999 amendment version of LSA-R.S. 28:1223, which allowed an employer to deduct the “amount of compensation” paid in total temporary disability (“TTD”) payments to any employee from supplemental earnings benefits (“SEB”) owed to that party: (1) whether the deduction should be dollar-for-dollar or week-for-week, and (2) whether the deduction should be taken at the beginning of the period for which the employee is entitled to SEB or the end. Defendants, Tate & Lyle (d/b/a Domino Sugar Corp.) and CIGNA (hereinafter referred to collectively as “Domino”), claim that the workers’ compensation judge (“WCJ”) both improperly awarded SEB and improperly calculated the offset allowed by LSA-R.S. 23:1223(B). For the reasons that follow, we affirm the portion of the judgment of the WCJ awarding Mr. Holley SEB, but reverse the portion awarding him penalties and attorney fees under LSA-R.S. 23:1201.
FACTS
On July 18, 1995, Mr. Holley suffered a rotator cuff tear and a labrium tear to his right shoulder in the work-related lifting accident at the Domino sugar refinery in Arabi, where he worked as a bulk sugar weigher. The parties stipulated |?at trial that Mr. Holley’s pre-injury weekly wages were $579.97. Mr. Holley consulted a number of physicians, including Dr. Michael E. Brunet, Tulane Medical Center orthopedic surgeon. Dr. Brunet performed an arthroscopic rotator cuff repair on November 10, 1995, followed by an open reduction surgical repair of the labri-um tear on August 27, 1996. Dr. Brunet initially released Mr. Holley to return to work on November 11, 1996. On or about May 21, 1997, Mr. Holley suffered a recurrence of his right shoulder injury and was unable to work from that date until Dr. Brunet again released him to return to work on June 16, 1997. Mr. Holley received TTD workers’ compensation benefits totaling $23,523.84 for some 73 weeks, through June 16,1997.
Mr. Holley then returned to work at Domino, working as a “bulk loader,” a job that required less lifting. He worked as a bulk loader until June 18, 1998, when he suffered an unrelated injury to his right knee. Dr. Brunet also treated that injury, releasing Mr. Holley to return to work on August 31, 1998. However, Dr. Brunet stated that Mr. Holley was unable to do his job at Domino and restricted him to lifting 40 pounds on an occasional basis only. Moreover, on September 10, 1998, Dr. Brunet provided a letter, indicating that Mr. Holley needed to “change vocationally,” and giving him a 15 percent disability rating in his right upper extremity. Accordingly, Mr. Holley did not return to his old job, but elected to take vacation time.
On October 8, 1998, Mr. Holley met with Domino representatives, George W. Pound, Production Manager, and Steven McSherry, Area Engineer, at which time he presented the September 10, 1998, letter from Dr. Brunet. At that meeting, Mr. Pound reportedly told Mr. Holley that it would be best for him to resign. Mr. Holley was never offered alternative light-duty work at Domino, nor was he [3informed of his right to workers’ compensation benefits. He resigned his position at Domino that day, October 8, 1998; Mr. Pound typed his resignation letter. Mr. Holley stated at trial that he never met with a vocational rehabilitation person.
*97 However, three weeks before his official resignation from Domino, on September 17, 1998, Mr. Holley had started working for a friend at Ultra Well Service at a salary of $1,800 per month for an average of 50 hours work per week. Mr. Holley was also considered to be on-call 24 hours a day, seven days a week. Thus, Mr. Holley claims that his salary at Ultra Well represented an hourly rate of $8.34. Mr. Holley indicated at trial that he did not seek employment anywhere besides Ultra Well during that period. On January 21, 1999, Mr. Holley filed a claim for SEB against Domino. On September 10, 1999, Mr. Holley was laid off by Ultra Well, as a result of which he received two weeks of unemployment compensation during October of 1999.
Mr. Holley testified that he applied for a number of jobs after being laid off by Ultra Well. As a result of his job search, he learned that the average starting salary for fork-lift operators was between $7 and $8 per hour. In November 1999, Mr. Holley began working as an operator for Boasso American at $8.50 per hour. However, Mr. Holley had to leave his job at Boasso prior to trial because the pain in his shoulder flared up; he stated at trial that he was unable to do anything at that time. Nevertheless at some point prior to trial, Mr. Holley had applied for a job as a fork-lift loading operator at Domino.
The WCJ issued judgment on July 5, 2000, awarding Mr. Holley SEB in the following amounts: (1) $108.69 per week from September 17, 1998 to September 30, 1999, and (2) $159.98 per week from November 1, 1999 to May 8, 2000. The WCJ also imposed a $2,000 penalty and $2,000 attorney fees on Domino for its |4arbitrary and capricious failure to pay Mr. Holley SEB. Domino appeals, asserting the following: (1) Mr. Holley failed to prove entitlement to SEB; (2) the WCJ miscalculated Domino’s entitlement to offset of SEB for amounts paid in TTD benefits; (3) the WCJ might have improperly cast ACE USA/CIGNA in judgment; and (4) the WCJ improperly imposed penalties and attorney fees on Domino.
ENTITLEMENT TO SEB
The burdens of proof in an SEB workers’ compensation case were set out by the Louisiana Supreme Court in Banks v. Industrial Roofing & Sheet Metal Works, 96-2840 (La.7/1/97), 696 So.2d 551, as follows:
“The purpose of SEBs is to compensate the injured employee for the wage earning capacity he has lost as a result of his accident.” Pinkins v. Cardinal Wholesale Supply, Inc., 619 So.2d 52, 55 (La.1993). An employee is entitled to receive supplemental earnings benefits (SEBs) if he sustains a work-related injury that results in his inability to earn ninety percent (90%) or more of his average pre-injury wage. LA. REV. STAT. ANN. § 23:1221(3)(a) (West Supp.1997). Initially, the employee bears the burden of proving, by a preponderance of the evidence, that the injury resulted in his inability to earn that amount under the facts and circumstances of the individual case. Freeman, 93-1530 at p. 7, 630 So.2d at 739. “Th[is] analysis is necessarily a facts and circumstances one in which the court is mindful of the jurisprudential tenet that workers’ compensation is to be liberally construed in favor of coverage.” Daigle v. Sherwin-Williams Co., 545 So.2d 1005, 1007 (La.1989).
Once the employee’s burden is met, the burden shifts to the employer who, in order to defeat the employee’s claim for SEBs or establish the employee’s earning capacity, must prove, by a preponderance of the evidence, that the em *98 ployee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employer’s community or reasonable geographic region. LA. REV. STAT. ANN. § 23:1221(3)(c)(i) (West Supp. 1997); Daigle, 545 So.2d at 1009. Actual job placement is not required. Romero v. Grey Wolf Drilling Co., 594 So.2d 1008, 1014-15 (La.App. 3d Cir.1992). The amount of SEBs is based upon the difference between the claimant’s pre-injury average monthly wage and the claimant’s proven post-injury monthly earning capacity. LA. REV. STAT. ANN. § 23:1221(3)(a) (West Supp.1997).
| ffd. at 8-9, 696 So.2d at 556. Thus, determination of whether an injured employee is entitled to workers’ compensation benefits involves a shifting burden of proof. Initially, the employee bears the burden of proving, by a preponderance of the evidence, that, as a result of a work-related accident, he is unable to earn at least 90 percent of his pre-injury salary. Once the employee has met his burden of proof, the burden shifts to the employer to defeat the employee’s claim for SEB, or “to establish the employee’s earning capacity.” Id. at 9, 696 So.2d at 556. In order to do that, the employer is required to prove “that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employer’s community or reasonable geographic region.” Id.
Domino claims that Mr. Holley failed to carry his burden of proving, by a preponderance of the evidence, that his work-related injury resulted in his inability to earn 90 percent of his pre-injury salary under the facts and circumstances of the individual case. Domino claims that the evidence given by Mr. Holley of his actual earnings is insufficient to establish the amount of money he is able to earn and that the WCJ therefore committed manifest error in awarding SEB to Mr. Holley.
Moreover, in Fontenette v. McDermott, 95-0190 (La.App. 1 Cir. 10/6/95), 694 So.2d 266, another case cited by Domino, the court stated as follows:
In determining whether the worker has discharged his burden of proof regarding his alleged disability, the hearing officer should accept as true a witness’s uncontradicted testimony absent circumstances casting suspicion on the reliability of this testimony. Bruno v. Harbert International, Inc., 593 So.2d 357, 361 (La.1992). The factfinder’s determinations as to whether the worker’s testimony is credible and whether the worker has discharged his or her burden of proof are factual determinations not to be disturbed on review unless clearly wrong or absent a showing of manifest error. Gonzales v. Babco Farm, Inc., 535 So.2d 822, 824 (La.App. 2nd Cir.), unit denied, 536 So.2d 1200 (La.1988).
Id. at 5, 694 So.2d at 269-70. In Fonten-ette, the court found that numerous circumstances cast suspicion on the reliability of the employee’s testimony, and that his testimony was therefore insufficient to carry his burden of proof.
In the instant case, Mr. Holley presented uncontested medical evidence that he is unable to return to his pre-injury job at Domino in the form of the September 10, 1998, letter from Dr. Brunet, which also indicated that Mr. Holley had suffered a 15 percent disability of his right upper extremity. Mr. Holley also presented his own uncontested testimony concerning his search for jobs and his post-injury earnings.
Unquestionably, LSA-R.S. 23:1221 and the jurisprudence interpreting that statute place the initial burden on the employee to *99 prove his inability to earn 90 percent of his pre-employment salary. However, the jurisprudence indicates that minimal evidence is required to fulfill that burden of proof. For example, in Banks, 96-2840, 696 So.2d 551, the court affirmed the hearing officer’s finding that the employee had carried his initial burden by showing two things: (1) that he |fiwas unable to return to his pre-injury employment, and (2) that he had been assigned a 23% upper extremity disability rating and a 14% total body disability rating.
Domino has suggested no circumstances to cast suspicion on Mr. Holley’s testimony or on the other evidence presented by Mr. Holley. Domino makes much of the fact that Mr. Holley never sought its help in finding employment; however, that has never been a requirement for carrying the employee’s initial burden of proof in an SEB case. In fact, the only time the employer’s involvement becomes 17important is when the burden has shifted to the employer to show that jobs exist in the market which would allow the employee to make 90 percent of his pre-injury salary. Under the circumstances of this case, evaluated in light of the principles set forth in Banks and Fontenette, the WCJ was not manifestly erroneous in finding that Mr. Holley proved his entitlement to SEB.
This conclusion is supported by the Louisiana Supreme Court’s statement in Banks that it is the employer who is required “to establish the employee’s earning capacity,” as a part of its defense after the employee has carried his or her initial burden of proof. Id. at 9, 696 So.2d at 556. Moreover, the employer is required to prove that the employee is “physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employer’s community or reasonable geographic region.” Banks, 96-2840 at 9, 696 So.2d at 556. In Fallen v. New Orleans Police Department, 97-0022 (La.App. 4 Cir. 7/23/97), 697 So.2d 1077, the court held that the employer had not carried its burden of proving that it was entitled to discontinue SEB when there was no medical evidence that the employee could work full-time and no evidence of available jobs for which the employee could earn ninety percent of his pre-injury wage. Id. The record in this case indicates that Mr. Holley could not return to work at the time of trial, although he had been able to perform some types of work at various times between his accident and the trial.
We note that the record evidence in this case indicates that Domino had an opening for a fork-lift operator earning $14.50 at the time of trial. Although Mr. Holley stated that he applied for that job, Mr. Pounds stated that he was unaware of that fact. Moreover, no evidence was presented indicating that Mr. Holley was qualified for that job, or that Mr. Holley was able to perform that job. Finally, we |snote that the WCJ awarded SEB to Mr. Holley only through May 8, 2000, one week prior to the May 15, 2000 trial. Thus, Mr. Holley’s ability to earn 90 percent of his salary after the trial is immaterial to our review of the judgment of the WCJ. Under the circumstances, we find no manifest error in the decision of the WCJ to award SEB to Mr. Holley. That decision is hereby affirmed.
TTD BENEFITS OFFSET OF SEB
In the instant case, the parties stipulated that Mr. Holley received $23,523.84 in TTD benefits, a total of 73 weeks of compensation. The WCJ awarded Mr. Holley SEB in the amount of $108.69 per week from September 17, 1998, through September 30, 1999, a period of 54 weeks, *100 for a total of $5,869.26, and in the amount of $159.98 per week from November 1, 1999 through May 8, 2000, a period of 26 weeks, for a total of $4,159.48. Thus, the WCJ found that Mr. Holley was entitled to 80 weeks of SEB totaling $10,028.74. The judgment of the WCJ does not deduct any of the TTD benefits previously paid by Domino from the SEB payments it awarded.
Domino claims, however, that, under the applicable version of LSA R.S. 23:1223(B), the judgment should have reflected that its previous payment of $23,523.84 in TTD benefits to Mr. Holley completely offset the $10,028.74 in SEB the WCJ awarded Mr. Holley. Domino’s argument is based on the following arguments: (1) that, under LSA-R.S. 23:1223(B), it is entitled to a dollar-for-dollar deduction of TTD benefits previously paid against SEB awarded, and (2) that the dollar-for-dollar deduction should be applied at the beginning of the time period for which SEB is due.
UType of credit
LSA-R.S. 23:1223(B), which, as amended in 1999, provides, in pertinent part, as follows:
Except as provided in R.S. 23:1221(4)(s), when compensation has been paid under R.S. 23:1221(1) [TTD benefits], (2) [permanent total disability (PTD) benefits], or (4) [permanent partial disability (PPD) benefits], the number of weeks of compensation paid shall be deducted from the number of weeks of compensation allowed under R.S. 23:1221(3)[SEB],
(Emphasis added.) Prior to the 1999 amendment, the above statute provided that the “amount of such payment” of TTD, PTD, or PPD benefits “shall be deducted from any compensation” allowed for SEB. Thus, the amendment made two changes in the statute: (1) changed the phrase “amount of such payment” to number of weeks of compensation paid, and (2) changed the phrase “any compensation” to “the number of weeks of compensation.” The 1999 amendment became effective on August 15, 1999. Thus, determination of the applicable version of the above statute to the instant case is complicated by the fact that the amendment became effective after Mr. Holley’s work-related injury and the payment of TTD benefits, and in the middle of the period for which he was awarded SEB.
Domino’s argument that it is entitled to a dollar-for-dollar deduction of the TTD benefits it previously paid from the SEB benefits awarded is based on a simple deductive syllogism, as follows:
Premise 1: The pre-1999 amendment version of LSA R.S. 23:1223(B) applies to this case.
Premise 2: The pre-1999 amendment version of LSA R.S. 23:1223(B) provided for a dollar-for-dollar credit.
Conclusion: Therefore, a dollar-for-dollar credit applies to this case.
ImAs with any deductive argument, a fallacy in one of the premises results in a fallacy in the conclusion. Thus, the question to be determined by this court is whether Domino’s premises are correct. If either premise is incorrect, the conclusion is incorrect.
Domino’s first premise is that the pre 1999 amendment version of LSA-R.S. 23:1223(B) applies to this case. A necessary corollary to this premise is that the 1999 amendment, changing “amount of such payment” to “number of weeks of compensation paid,” was a substantive change in the law that may be applied prospectively only. La. C.C. art. 6. If the amendment did not make a substantive change in the law, but is merely procedural or interpretative, it should be applied retroactively, meaning that the post-1999 *101 amendment version of LSA-R.S. 23:1223 applies to all pending cases, including the instant case. The application of La. C.C. art. 6 has been explained by the Louisiana Supreme Court as follows:
Article 6 requires a two-fold inquiry. First, we must ascertain whether the enactment expresses legislative intent regarding retrospective or prospective application. If such intent is expressed, the inquiry ends unless the enactment impairs contractual obligations or vested rights. If no such intent is expressed, the enactment must be classified as either substantive, procedural or interpretive. St. Paul Fire & Marine Ins. Co., 609 So.2d at 816; Cole v. Celotex Corp., 599 So.2d [1058], at 1063 [La.1992]. It is well accepted that substantive laws either establish new rules, rights, and duties or change existing ones, while interpretive laws merely establish the meaning the statute had from the time of its enactment. St. Paul Fire & Marine Ins. Co., 609 So.2d at 817. Procedural laws prescribe a method for enforcing a previously existing substantive right and relate to the form of the proceeding or the operation of the laws.
Keith v. U.S. Fidelity & Guaranty Co., 96-2075, p. 6 (La.5/9/97), 694 So.2d 180, 183.
The Louisiana Third Circuit Court of Appeal has held that the 1999 amendment to LSA-R.S. 23:1223 is interpretative and is therefore to be applied ^retroactively. See Manpower Temporary Services v. Lemoine, 99-636 (La.App. 3 Cir. 10/20/99), 747 So.2d 153, in which the court stated as follows:
Although the legislature failed to express whether the 1999 amendment should be applied retroactively or prospectively, we find that it is interpretive in nature in that it clarifies or explains and is intended to establish the meaning that La. R.S. 23:1223(B) had from the time of its enactment. Sudwischer v. Estate of Hoffpauir, 97-0785 (La.12/12/97); 705 So.2d 724; Mitchell v. Dixie Roofing & Sheet Metal Co., Inc., 95-288 (La.App. 3 Cir. 10/4/95); 663 So.2d 222.
Id. at 8, 747 So.2d at 159-60. Although the third circuit’s conclusion on this matter is not binding on this court, our review of the legislative materials accompanying the adoption of the amendment, in light of the principles stated by the Louisiana Supreme Court in Keith, convince us that the third’s circuit’s conclusion is correct.
The “Resume Digest” [1] for House Bill 621, which amended LSA-R.S. 23:1223, states as follows: “Proposed law retains present law offset in the stated circumstance but changes the method of offset, providing that the number of weeks of the compensation paid shall be deducted from the number of weeks allowed, instead of the present law dollar-for-dollar offset.” (Emphasis in original.) Thus, the digest indicates that the present law is retained, though the method of calculation is changed. According to Keith, amendments that “prescribe a method for enforcing a previously existing substantive right” are procedural. Accordingly, we hold that the 1999 amendment to LSA-R.S. 23:1223 is procedural, and should be applied retroactively to this case.
Because we have found that the first premise on which Domino bases its conclusion that it is entitled to a dollar-for-dollar credit contains a fallacy, | ^Domino’s logical conclusion also contains a fallacy. Accordingly, it is not necessary for us to consider *102 Domino’s second premise-i.e., that the pre-amendment version of LSA R.S. 23:1223 provided for a dollar-for-dollar credit. Thus, we pretermit discussion of the cases Domino cites in support of that premise. See Jacks v. Banister Pipelines America, 418 So.2d 524 (La.1982); Bamberg v. City of Shreveport, 26, 278 (La.App. 2 Cir. 12/7/94), 647 So.2d 1207, writ denied, 95-1414 (La.3/30/95), 651 So.2d 845; Cline v. St. Jude Medical Center, Inc., 619 So.2d 712 (La.App. 4 Cir.1993); Fallen, 97-112, 697 So.2d 1077, 1080. We find no merit in Domino’s arguments on this issue.
Time for taking deduction
Domino also argues that the deduction of TTD benefits from SEB should be applied at the beginning of the time period for which SEB is due. Given our previous finding that LSA R.S. 23:1223(B) allows the employer to take a week-for-week credit for TTD benefits previously paid against SEB awarded, acceptance of Domino’s argument would require this court to find that Domino owes Mr. Holley only the last seven weeks of SEB awarded (80 weeks of SEB awarded minus 73 weeks of TTD benefits previously paid).
On the other hand, Mr. Holley argues that the 73-week deduction in SEB benefits to which Domino is entitled should simply be deducted from the 520 maximum number of weeks he could collect SEB from Domino under LSA-R.S. 23:1221(3)(d), meaning that he would be entitled to a maximum of 447 weeks of SEB. Since the WCJ awarded Mr. Holley only 80 weeks of SEB, Mr. Holley would be entitled to receive the entire number of weeks of SEB awarded by the |13WCJ under that theory of calculation. The judgment of the WCJ reflects this theory.
One of Domino’s primary arguments in support of its position on this issue is the use of the mandatory word “shall” in the pre-1999 amendment version of LSA R.S. 23:1223(B). Because we have found that the 1999 amendment applies retroactively to this case, that argument has no merit. Further, the language of that amendment actually settles this issue because the statute expressly provides that the deduction shall be taken from “the number of weeks of compensation allowed under R.S. 23:1223(3).” The number of weeks of compensation allowed under that statute, as stated above, is 520 weeks. Mr. Holley is therefore entitled to a maximum of 447 weeks SEB. Since the WCJ did not commit manifest error in awarding Mr. Holley 80 weeks of SEB, we find no merit in Domino’s arguments on this issue.
CASTING CIGNA IN JUDGMENT
Domino also argues that the WCJ may have improperly cast CIGNA in judgment. According to Domino, CIG-NA’s ESIS unit (now Ace USA) provided only claims administration services and therefore should not have been a defendant in this case. Moreover, Domino claims that no evidence of insurance was presented at trial. However, the judgment of the WCJ does not mention CIG-NA and does not list an attorney for CIG-NA. Generally, “if a judgment is silent as to a part of the demand that part of the demand is construed as rejected.” Lacour v. Lacour, 99-0913, p. 6 (La.App. 4 Cir.2/9/00), 763 So.2d 678, 681. Accordingly, this issue is moot.
luPENALTIES AND ATTORNEY FEES
Finally, Domino claims that the WCJ improperly awarded penalties and attorney fees under LSA-R.S. 23:1201 for its alleged arbitrary and capricious failure to pay SEB. The Louisiana Supreme Court has interpreted that statute to require that “penalties and attorney fees for failure to timely pay benefits shall be assessed un *103 less the claim is reasonably controverted or such nonpayment results from conditions over which the employer or insurer had no control.” Brown v. Texas-La. Cartage, Inc., 98-1063, p. 8 (La.12/1/98), 721 So.2d 885, 890 (emphasis added). The Broim case states as follows:
In general, one can surmise from the plain meaning of the words making up the phrase “reasonably controvert” that in order to reasonably controvert a claim, the defendant must have some valid reason or evidence upon which to base his denial of benefits. Thus, to determine whether the claimant’s right has been reasonably controverted, thereby precluding the imposition of penalties and attorney fees under La. R.S. 23:1201, a court must ascertain whether the employer or his insurer engaged in a nonfrivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed.
Id. at 9, 721 So.2d at 890.
We find that the decision of the WCJ to award penalties and attorney’s fees in this case is manifestly erroneous. Domino vehemently defended against Mr. Holley’s claim on the basis of prior jurisprudence interpreting LSA-R.S. 23:1223. Moreover, we note that Domino would not have owed Mr. Holley any SEB had its interpretation of LSA-R.S. 23:1223 been correct. Accordingly, we find that Domino reasonably controverted Mr. Holley’s claim for workers’ compensation benefits, and reverse the award of penalties and attorney fees under LSA-R.S. 23:1201.
I ^CONCLUSION
Accordingly, the judgment of the WCJ is affirmed awarding Mr. Holley SEB, but denying his claim for penalties and attorney fees is reversed. Each party will be assessed its own costs.
AFFIRMED IN PART; REVERSED IN PART; RENDERED.

. The digests are prepared by the House Legislature Service, and are not considered a part of the legislative instrument. Nevertheless, like committee minutes, they provide insight into the intent of the legislature in adopting the legislature.