STATE OF LOUISIANA     \*     NO. 2024-KA-0420

VERSUS     \*     COURT OF APPEAL

SULLIVAN WALTER     \*     FOURTH CIRCUIT

    \*     STATE OF LOUISIANA

    \*

    \*

\* \* \* \* \* \* \*

**LEDET, J., DISSENTS WITH REASONS**

Contrary to the majority, I would find the district court manifestly erred in granting Sullivan Walter's claim under the Louisiana Wrongful Conviction Compensation statute, La. R.S. 15:572.8 (the "LWCC").[1] To recover under the LWCC, a petitioner must satisfy two requirements:

> (1) The conviction of the petitioner has been reversed or vacated; and
>
> (2) The petitioner has proven by clear and convincing scientific or non-scientific evidence that he is factually innocent of the crime for which he was convicted.

La. R.S. 15:572.8 (A). Here, only the second requirement—factual innocence—is disputed.

In this context, factual innocence is defined, by statute, to mean "the petitioner did not commit the crime for which he was convicted and incarcerated nor did he commit any crime based upon the same set of facts used in his original conviction." La. R.S. 15:572.8 (B). Implicit in the Legislature's inclusion of the factual innocence requirement is its intent that compensation will not be awarded in every case in which post-conviction relief is granted. *See In re Williams*, 07-1380, p. 5 (La. App. 1 Cir. 2/20/08), 984 So.2d 789, 793. Indeed, the LWCC

---

[1] In reviewing a LWCC case, an appellate court applies the manifest error standard. *See State v. Ruano*, 19-0709, p. 4 (La. App. 4 Cir. 3/4/19), 294 So.3d 44, 46 (internal citations omitted).

1

requires the petitioner prove factual innocence by clear and convincing evidence. La. R.S. 15:572.8 (A). Construing the LWCC, the Louisiana Supreme Court has defined a petitioner's burden of proving factual innocence as requiring proof that "it is highly probable or much more probable than not that [the petitioner] did not commit the crime for which he was convicted or any other crime from the same set of facts." *Jones v. State*, 22-01455, p. 5 (La. 5/5/23), 362 So.3d 341, 344.

"[I]n a civil petition for compensation for wrongful conviction and imprisonment, a petitioner does not have the benefit of a presumption of innocence, but rather is tasked with producing evidence to prove his factual innocence." *State v. Alexander*, 22-12, p. 14 (La. App. 5 Cir. 6/21/23), 367 So.3d 867, 879, *writ denied*, 23-01017 (La. 11/8/23), 373 So.3d 46. One method of proving factual innocence is establishing that the petitioner is excluded as the perpetrator. *Alexander*, 22-12, pp. 19-20, 367 So.3d at 882. Explaining this method, the *Alexander* court observed:

> Such evidence, as contemplated by the statute, may be scientific such as DNA evidence, forensic bite marks or fingerprints, or non-scientific evidence, such as alibi testimony from the petitioner or another witness, or some other kind of physical evidence, that may directly or circumstantially exclude the petitioner as the perpetrator of the crime.

*Id*.

Mr. Walter's argument that he met his burden of proving factual innocence can be capsulized into the following logical syllogism:

- The serological tests establish that the perpetrator was a non-secretor;

- Mr. Walter is a secreter; therefore,

- Mr. Walter is excluded from being the perpetrator.

2

Mr. Walter relied upon this same syllogism—albeit not by name—in his prior appeals to this Court.[2]

The syllogism hinges on establishing the correctness of the first prong—that the serological tests establish the perpetrator was a non-secretor.[3] This Court, in *Walter Two* and *Walter Three*, found that the first prong was not met given Mr. O'Neal's testimony that the serological tests results were inconclusive as to the perpetrator's secretor status. For this reason, this Court affirmed the denial of Mr. Walter's MNT in both *Walter Two* and *Walter Three*.

Addressing the MNT, this Court in *Walter Two* observed:

> At the hearing on the motion for new trial, Officer O'Neal's testimony centered on the inconclusive nature of the secretor test results. No testimony was elicited from Officer O'Neal during defendant's trial that the tests results were conclusive that the perpetrator was a non-secretor.
>
> At the end of the hearing on the motion for new trial, Judge Cannizzaro [then the district court judge in the criminal case] stated that he wished to compare the separate testimonies of Officer O'Neal prior to rendering a decision on defendant's motion. In light of the noncontradictory nature of Officer O'Neal's testimony and the weight of the victim's identification of Walter, there appears to be no abuse of discretion in the trial court's denial of the motion for new trial.

*Walter Two*, 94-2221, p. 6, 675 So.2d at 835.

Likewise, on remand from the Louisiana Supreme Court,[4] this Court in *Walter Three* observed:

---

[2] Mr. Walter, in the underlying criminal case, filed a trio of appeals to this Court—*State v. Walter*, 514 So.2d 620 (La. App. 4th Cir. 1987) ("*Walter One*"); *State v. Walter*, 94-2221 (La. App. 4 Cir. 5/29/96), 675 So.2d 831 ("*Walter Two*"); and *State v. Walter*, 94-2221 (La. App. 4 Cir. 7/23/97), 698 So.2d 439 ("*Walter Three*").

[3] *See Holley v. Tate & Lyle*, 00-2234, p. 10 (La. App. 4 Cir. 8/15/01), 797 So.2d 94, 100 (observing that "[a]s with any deductive argument, a fallacy in one of the premises results in a fallacy in the conclusion" and that "[i]f either premise is incorrect, the conclusion is incorrect").

[4] The Supreme Court, in *State v. Walter*, 96-1702, p.1 (La. 6/20/97), 695 So.2d 1340, 1340-41, instructed:

> This case is remanded to the Fourth Circuit for reconsideration. . . . The correct standard of review in this case therefore "is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles v. Whitley*, 514 U.S. 419, 434, 115 S.Ct. 1555, 1566, 131

[At the MNT hearing, Mr. O'Neal] acknowledged that his earlier tests of the victim's top and shorts had indicated that the seminal fluid stain found on the victim's shorts had shown no secretor activity. He explained that the stain had contained no blood group substances which could be identified through the testing procedure. He maintained that the report did not conclude that the depositor of the stain was a non-secretor, but he acknowledged that such was one of the possibilities. He testified that an individual's non-secretor status could not be determined from a stain garnered under these circumstances. That determination, he said, must be made through blood-typing of the individual to determine Lewis antigens as well as by testing a saliva sample.

*Walter Three*, 94-2221, p. 5, 698 So.2d at 441-42. Continuing, we observed that Mr. O'Neal set forth several possible reasons for his inability to detect blood group substances in the stain found on the shorts, including:

- [T]he area tested for secretor activity may have been of insufficient size, because it is a portion of the remainder of the original stain after testing for the presence of seminal fluid and spermatozoa.

- [T]he examined stain may have resulted from a mixture of seminal and vaginal fluids such that the stain residue could have been too diluted to reveal any blood group substances.

- [T]he stain portion to be tested may have been clipped from outside the original realm of the stain.

*Walter Three*, 94-2221, pp. 5-6, 698 So.2d at 442 (reformatted). Thus, this Court again affirmed the denial of Mr. Walter's MNT.

Here, Mr. Walter repackages the same syllogism argument in support of his LWCC claim. The only new items he cites are the joint agreement and motion to vacate Mr. Walter's convictions that was filed in August 2022 (the "Joint Motion"); and the opinion of his newly-retained DNA expert, Alan Keel. Neither the Joint Motion, nor Mr. Keel's opinion support Mr. Walter's position.

*The Joint Motion*

---

L.Ed.2d 490 (1995). On remand, the court of appeal must determine whether as the result of the state's untimely disclosure, the inability of the defense to place all evidence relevant to the reliability of the victim's identification testimony "'undermines confidence in the outcome of trial.'" *Kyles*, 514 U.S. at 434, 115 S.Ct. at 1566 (quoting *United States v. Bagley*, 473 U.S. 667, 678, 105 S.Ct. 3375, 3381, 87 L.Ed.2d 481 (1984)).

The DA and the Innocence Project New Orleans (the "Innocence Project"), on Mr. Walter's behalf, filed the Joint Motion. In the Joint Motion, they averred as follows:

> Under the circumstances of this rape case, which include the existence of reliable exclusionary serology results from both vaginal swabs and the victim's shorts worn immediately after the rape, where semen from the perpetrator of the rape was detected and sperm visualized on both, the [DA] agrees that Mr. Walter has met his factual innocence burden under La. C. Cr. P. art. 926.2(B).[5]

The DA, thus, conceded Mr. Walter's post-conviction relief claim of factual innocence.

---

[5] Effective August 2021, a new ground for post-conviction relief based on "actual innocence" was enacted in La. C.Cr.P. art. 926.2, which provides, in part:

> A. A petitioner who has been convicted of an offense may seek post conviction relief on the grounds that he is factually innocent of the offense for which he was convicted. . . .
>
> B. (1)(a) To assert a claim of factual innocence under this Article, a petitioner shall present new, reliable, and noncumulative evidence that would be legally admissible at trial and that was not known or discoverable at or prior to trial and that is either:
>
> (i) Scientific, forensic, physical, or nontestimonial documentary evidence.
>
> (ii) Testimonial evidence that is corroborated by evidence of the type described in Item (i) of this Subsubparagraph.
>
> (b) To prove entitlement to relief under this Article, the petitioner shall present evidence that satisfies all of the criteria in Subsubparagraph (a) of this Subparagraph and that, when viewed in light of all of the relevant evidence, including the evidence that was admitted at trial and any evidence that may be introduced by the state in any response that it files or at any evidentiary hearing, proves by clear and convincing evidence that, had the new evidence been presented at trial, no rational juror would have found the petitioner guilty beyond a reasonable doubt of either the offense of conviction or of any felony offense that was a responsive verdict to the offense of conviction at the time of the conviction.

While a post-conviction claim of factual innocence under La. C.Cr.P. art. 926.2 now requires that the petitioner present "new, reliable, and noncumulative evidence" that is either scientific, forensic, physical, or nontestimonial documentary evidence or testimonial evidence corroborated by this type of evidence, the Supreme Court, in the *Jones* case, held that a claim of factual innocence under La. R.S. 15:572.8 requires only clear and convincing scientific or non-scientific evidence that the petitioner did not commit the crime for which he was convicted and incarcerated nor did he commit any crime based upon the same set of facts used in his original conviction. *Jones*, 22-01455, p. 5, 362 So.3d at 344-45. Simply stated, the Supreme Court held that the proof requirement under the two separate statutory provisions is not the same.

At the hearing on the Joint Motion, the DA, represented by Emily Mall, accused Mr. O'Neal of "fudging" his testimony at the 1988 Motion for New Trial ("MNT") Hearing; she stated.[6]

> In the months after the trial, his counsel did have him blood[-]typed, and Mr. Walter is a secreter. And so, in response to learning that information in an evidentiary hearing in this court, the state did not re-test to make sure its original tests were accurate, it did not concede that the jury should have heard that Mr. Walter is a Type B secretor; it instead asked its criminalist to come in and "fudge." And that's what he did. So he came in and he said. Well, I said at the trial that maybe he—that he was a he wasn't—there was no secreter activity, but that doesn't necessarily mean that this person is a non-secreter. But Innocence Project New Orleans has done a comprehensive review of all the documents available in the case. They consulted with an expert, and we've also consulted with that expert about whether that is a good faith change in testimony under all the circumstances and all the evidence of this case. And it is not.

Given the DA's stipulations, the district court judge then assigned the criminal case granted the Joint Motion and vacated Mr. Walter's convictions.

As the majority correctly concludes, the DA's stipulations in connection with the Joint Motion, contrary to Mr. Walter's contention, have no preclusive effect in this LWCC case. Mr. Walter's factual innocence was never actually litigated in the post-conviction relief proceedings; rather, it was jointly admitted by the DA and Mr. Walter in the Joint Motion. Mr. Walter's reliance on the Joint Motion to establish his factual innocence is misplaced.[7]

*Mr. Keel's Opinion*

---

[6] Likewise, Mr. Walter has made the same allegation in the complaint he filed in federal court against, among others, Mr. O'Neal. At the LWCC hearing, Mr. Walter introduced correspondence—the Email—sent by Mr. O'Neal in relation to the federal suit, and Mr. O'Neal was questioned regarding the Email. Mr. Walter's attempts to take statements from the Email out of context is misplaced. In the Email, Mr. O'Neal both begins and ends with a strong statement denying ever falsifying data or perjuring himself. I would find that any reliance on the Email to establish Mr. Walter's factual innocence is belied by the entirety of its contents.

[7] Both Mr. O'Neal and the assistant DA who handled the MNT testified at the LWCC hearing that they were not contacted by the DA's office before the Joint Motion was filed. They both denied having any involvement in falsifying testimony. Moreover, as the State emphasizes, the DA failed to identify by name the individual assistant DA or other member of the DA's office who allegedly asked Mr. O'Neal to "fudge" his testimony.

The Innocence Project, in 2021, retained Mr. Keel as Mr. Walter's expert. Mr. Keel was asked to analyze Mr. O'Neal's 1986 to 1988 serological testing results and Mr. O'Neal's pertinent testimony regarding such testing. Mr. Keel conducted no new scientific testing in this case.[8]

At the hearing on Mr. Walter's LWCC petition, Mr. Keel testified that—accepting the accuracy of thee serological testing performed by Mr. O'Neal and Ms. Daniels—it is not scientifically possible that Mr. Walter, a secretor, could have been the source of the semen found by the police. Mr. Keel explained that the secretor versus non-secretor classifications are incompatible with each other; an individual cannot be both a secretor and a non-secretor.

But, Mr. Keel acknowledged the lack of documentation to support a finding that the evidence tested in this case conclusively established the perpetrator was a non-secretor. At best, Mr. Keel opined that multiple factors indicate the O'Neal Report's results are reliable.[9] Mr. Keel states in his report that "[w]hat is clear is that, based on both the Daniels and O'Neal reports and the O'Neal testimony [at trial], Mr. O'Neal believes the semen source was a non-secretor." (Emphasis in original). In footnote nine of his report, Mr. Keel addresses the underlined sentence, observing:

> The documentation I have reviewed is consistent with Mr. O'Neal's belief, but it is insufficient to establish that belief is correct. The

---

[8] At the LWCC hearing, Mr. Keel acknowledged that he did not personally test any evidence in this case. Mr. Keel testified that he did not know whether the evidence still existed, that he was not asked to test it, and that his "understanding is that [the evidence] does not exist."

[9] Mr. Keel identified the following factors that he opined indicated the reliability of the serological testing performed in this case:

- Given the victim's sexual and menstrual history, the semen tested is highly likely to have come only from the perpetrator;

- The victim put on her shorts and went to the hospital shortly after the assault, meaning that most of the semen from the perpetrator was likely captured in the samples collected that night; and

- Two independent tests, by two different individuals [Mr. O'Neal and Ms. Daniels], of two distinct samples, both found no secretor activity.

appropriate way to determine whether one would reliably expect to detect blood group substance from a secretor semen source that was necessarily comingled with other body fluids (e.g., a sample from a body orifice or dried stain from vaginal drainage) is a quantitative measure of the semen concentration of the type described above. There is no documentation that the NOPD used such a quantitative measure in this or any other case. Given that such objective quantification is not mentioned in any testimony that I reviewed, I do not believe it was in use. An alternative basis for supporting an expectation of whether one could reliably detect blood group substance from a secretor semen source that was necessarily comingled with other body fluids is a subjective observation of the intensity of the acid phosphate presumptive test for semen and/or the number of sperm observed among the cellular material. . . . [W]hile this is relied upon by some analysts, it is inferior to using a quantitative measure. Mr. O'Neal could have made such subjective observations while detecting seminal fluid and spermatozoa in this case, but his report merely records the presence of seminal fluid and spermatozoa without recording the intensity of the test or the number of sperm observed.

When questioned by the State at the 2024 LWCC hearing regarding footnote nine, Mr. Keel agreed that he was "opining that though Mr. O'Neil [sic] believed the crime scene sample was that of a non-secretor, the document and information was actually, and is actually, insufficient to render such a conclusion." Mr. Keel explained that "[t]he information that I have is insufficient. It is in terms of the science."[10] He further testified that "[i]f one considers the findings of Ms. Daniels and Mr. O'Neil in conjunction with the circumstances of the case, then that belief is supported." But, Mr. Keel agreed that, in the ordinary course, "the lack of a blood type antigen could lead to the possibility that the individual is a non-secretor, but it's merely a possibility" and "that there are other possibilities for why the — why a blood type was not discerned." Mr. Keel, thus, essentially agreed with Mr. O'Neal's testimony at the 1988 MNT hearing.

---

[10] Mr. Keel, in his capacity as an expert for the plaintiff in a federal civil rights case, voiced a similar criticism of a serologist's testing procedures in *Johnson v. New Jersey*, No. CV 18-11299 (unpub.), 2024 WL 4906034, at *3 (D.N.J. Nov. 27, 2024). There, Mr. Keel opined that given the serologist's failure to perform quantitative measures of the amount of semen present, "there was no basis for believing there was enough semen to detect blood type information, [and, thus,] no one who could produce semen could be excluded, i.e., the semen detected could have come literally from anyone." Indeed, in *Johnson*, the serologist's supervisor observed that "the serological testing was inconclusive." 2024 WL 4906034, at *5.

Nonetheless, Mr. Keel testified that he gave more weight to Mr. O'Neal's trial testimony than his MNT testimony because "in [his] opinion, the testimony in the Post-conviction [MNT] Hearing was a—an attempt by Mr. O'Neil [sic] to excuse his testimony at trial." Put differently, Mr. Keel testified that Mr. O'Neal's testimony at the 1988 MNT hearing that it was possible the perpetrator was a non-secretor was contrived and an excuse to accommodate his trial testimony that the perpetrator was a non-secretor. Regardless, Mr. Keel failed to opine that Mr. O'Neal's belief is scientifically conclusive. As a result, Mr. Keel's reinterpretation of the testimony and serology reports is insufficient to support a finding of factual innocence.

Moreover, as the State points out, Mr. Keel's opinion voiced here is similar to the opinion Mr. Keel was prepared to voice as an expert in *Cage v. City of Chicago*, 979 F.Supp.2d 787 (N.D. Ill. 2013). There, the federal court concluded that Mr. Keel could not "opine on whether [another forensic scientist] provided misleading trial testimony [in] previous cases." *Cage*, 979 F.Supp.2d at 832 n.19. Addressing Mr. Keel's proposed testimony critiquing another forensic scientist's testimony,[11] the federal court observed:

> In order to reliably conclude that [the other forensic scientist's] testimony at trial . . . was false, misleading, or erroneous when viewed in comparison to her lab documents, [Mr.] Keel must understand not only the scientific bases for [the other forensic scientist's] conclusions but also the procedural and evidentiary constraints imposed by the legal system.

*Cage*, 979 F.Supp.2d at 830. The federal court further observed that "a forensic scientist providing testimony at trial can only answer the questions they are being asked." *Cage*, 979 F.Supp.2d at 830.

---

[11] The issue before the federal district court in *Cage* included "Defendants' Joint Motion No. 2 to Bar Plaintiff's Expert, Charles Alan Keel's Testimony Regarding Defendant Pam Fish's Alleged Fraudulent Intent/Credibility in Testifying Concerning Serological Analysis Performed in Unrelated Criminal Cases." 979 F.Supp.2d at 798.

The *Cage* Court's observation is apt here. In *Walter Two* and *Walker Three,* this Court observed that Mr. O'Neal was not asked at trial whether his tests were conclusive of the perpetrator's secretor status. Indeed, this Court observed in *Walter Three* that "[n]o testimony was elicited from [Mr.] O'Neal during defendant's trial that the tests results were conclusive that the perpetrator was a non-secretor. 94-2221, p. 6, 675 So.2d at 835.[12] Similarly, Mr. Keel observed the following in his report:

> Based on Mr. O'Neal's undisclosed report of August 12, 1986 [the Supplemental Report,[13]] [Mr. O'Neal] believed the defendant was a non-secretor, and as such the defendant could not be eliminated as the source of the semen. It is unclear why no testimony as to the defendant's secretor status was not elicited from Mr. O'Neal.

Based on the evidence in the record, the only conclusion that can be drawn, as the State contends, is that the perpetrator's secretor status is undetermined. Stated otherwise, the record does not support a finding that Mr. Walter is scientifically excluded as the perpetrator. Mr. Walter, thus, failed to satisfy his burden of establishing factual innocence.

Lastly, I would find, as this Court observed in *Walter Three*, that "[t]he inconclusive nature of the secretor test results leaves the victim's identification testimony unsullied." 94-2221, pp. 6-7, 698 So.2d at 442. The victim, L.S., has never recanted her positive identification of Mr. Walter as the perpetrator; and she is now deceased. *See Jones*, 22-01455, p. 3, 362 So.3d at 347 (Crain, J., Dissenting) (observing that "[the petitioner] can [not] prove by clear and

---

[12] *See also Walter Two*, 94-2221, p. 4 n.3, 675 So.2d at 834 (observing that "[n]o testimony was elicited [at trial] concerning whether the tests were conclusive that the perpetrator was a non-secretor").

[13] In August 1986, Mr. O'Neal prepared a supplemental crime lab report, reflecting the results of his testing of Mr. Walter's blood, saliva, and hair samples (the "Supplemental Report"). The Supplemental Report stated that "[s]pecimen 1 [blood samples] was unsuitable for analysis," that "[s]ecretor testing of Specimen 2 [saliva] revealed no secretor activity," and that "[s]pecimen 3 [hair] was not analyzed." The Supplemental Report was neither mentioned nor introduced at trial. Mr. Keel, however, mentions the Supplemental Report several times in his own report.

convincing evidence he is factually innocent without A.H. [the victim] recanting her identification, or at least being able to defend it" and that "[t]hus, no civil recovery is available"); *Alexander*, 22-12, p. 7, 367 So.3d at 891 (Molaison, J., dissenting) (citing Justice Crain's dissent in *Jones* and posing the question "[h]ow can a claim of factual innocence stand when there remains a positive identification of the perpetrator by the victim?").

For these reasons, I would find that the district court manifestly erred in concluding that Mr. Walter established by clear and convincing evidence his factual innocence of the crime for which he was convicted. Accordingly, I respectfully dissent.