514 So.2d 620 (1987)
STATE of Louisiana
v.
Sullivan WALTER.
No. KA-7329.
Court of Appeal of Louisiana, Fourth Circuit.
October 7, 1987.
William J. Guste, Jr., Atty. Gen., William B. Faust, III, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., John H. McCusker, III, Assistant Dist. Atty., New Orleans, for plaintiff-appellee, State of La.
James A. Dunn, Jr., New Orleans, for defendant-appellant, Sullivan Walter.
Before GULOTTA, C.J., and GARRISON and WARD, JJ.
WARD, Judge.
Sullivan Walter was convicted of forcible rape, aggravated burglary, and two counts of aggravated crime against nature. He was sentenced as a multiple offender on the forcible rape conviction to 35 years imprisonment at hard labor without benefit of probation or good time and without benefit of parole for the first half of the sentence. On each of the other convictions he was sentenced to 15 years imprisonment at hard labor without benefit of parole, probation *621 or suspension of sentence. All sentences were to run concurrently.
On May 10, 1986 at approximately midnight, the victim had just finished cleaning her bedroom carpet and was taking a shower; her eight year old son was sleeping in an adjacent bedroom. She heard a noise at the front of the house and investigated, but found nothing unusual. She returned to showering. Moments later, a young black man stepped into the bathroom with a yellow rag over his face, carrying a large kitchen knife. He held the knife to the victim's throat, and told her to be quiet or he would hurt her and her son. He dragged her into her bedroom, pushed her to the floor and ordered her to perform fellatio on him. He then performed cunnilingus on the victim and had intercourse with her. In the struggle, the victim sustained lacerations and bruises.
At trial, the victim testified that during the commission of the crimes the assailant dropped the rag from his face and she was able to observe him at very close range for several minutes in the lighted bedroom. The police detective who handled the case testified that four days after the crimes, he took the victim to a police artist who drew a composite sketch of the perpetrator. When the sketch was circulated through the New Orleans Police Department, another officer recognized the sketch as Sullivan Walter. The victim was then shown a photographic line-up, and she identified Walter as her assailant. She also identified Walter at trial.
On appeal, Walter assigns one error. He argues that he was prejudiced because the State did not respond in a timely manner to his motion for discovery of the results of scientific tests, making it impossible for him to fully prepare his defense. Upon consideration of this assignment of error, we affirm Walter's convictions subject to his right to move for a new trial. Our review of the record for patent errors reveals an error in Walter's sentence, which we amend.
In his assignment of error, Walter contends that his conviction should be reversed because the State did not produce the results of a New Orleans Police Department laboratory analysis of seminal fluid from the victim's clothing until the day of trial. Several weeks before trial defense counsel had filed a Motion for Bill of Particulars and Discovery and Inspection requesting, among other things, copies of any scientific tests discoverable under La. C.Cr.P. art. 719. Although the State's answer to the motion indicates that all such reports were attached to the answer, the State concedes in its brief that the report from the police laboratory was not given to defense counsel until the day of trial. The laboratory report was not admitted into evidence, but the police criminalist who had performed the analysis and prepared the report testified to its contents. He explained that tests showed that the perpetrator of the rape was a non-secretor, that is, he belonged to a group constituting 20 percent of the population whose blood type cannot be determined from saliva or seminal fluid. Walter asserts that because the test indicated that the perpetrator was a non-secretor, one of the group that composes only 20 percent of the population, there is an 80 percent chance that he was not the perpetrator. Therefore, he contends that his defense was prejudiced by the State's untimely production of the lab report because, had he known of the test results earlier, he could have conducted tests to exonerate himself by proving that he is a secretor.
While there is no doubt that the State violated its duty to respond to Walter's discovery requests in a timely manner, La. C.Cr.P. art. 729.5 provides a number of effective remedies to cure any potential prejudice:
A. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this Chapter or with an order issued pursuant to this Chapter, the court may order such party to permit the discovery or inspection, grant a continuance, order a mistrial on motion of the defendant, prohibit the party from introducing into evidence the subject matter not disclosed, or enter *622 such other order, other than dismissal, as may be appropriate.
B. In addition to the sanctions authorized in Part A hereof, if at any time prior or subsequent to final disposition the court finds that either the state through the district attorney or assistant district attorney or the defendant or his counsel has willfully failed to comply with this Chapter, such failure shall be deemed to be a constructive contempt of court.
The record does not indicate, however, that the defense sought any of these available remedies or sanctions before seeking a reversal of the conviction on appeal. Moreover, in addition to the provisions of Article 729.5, Walter could perhaps have moved for a new trial had he obtained test results after trial which showed that he could not have been the perpetrator of the rape.
Despite the failure of the defense to avail itself of remedies in the Trial Court and despite the weight of the victim's identification of Walter, we believe his assignment of error has merit. Therefore, out of an abundance of care that Walter's rights are not violated and due to the possibility that the test results produced on the day of trial may be exculpatory Brady material, we hold that the police criminalist's testimony that the perpetrator was a non-secretor, is tantamount to newly discovered evidence. Construing C.Cr.P. arts. 851(3) and 854 very broadly, we believe that under the circumstances of this case, Walter should be entitled to move for a new trial on the basis of the secretor test results. We, therefore, remand this case to the District Court so that Walter may move for a new trial and present, at the hearing on the motion, evidence that he is a secretor. That evidence will not, of course, be determinative of whether Walter is entitled to a new trial, and he may again appeal following the Trial Court's ruling on the new trial motion.
Turning to our patent error review of Walter's sentence, we note that the 15-year sentence for aggravated burglary is without benefit of parole, probation or suspension. R.S. 14:60 does not provide for the unavailability of these benefits. As a second offender, however, Walter is not entitled to probation and suspension of sentence, C.Cr.P. art. 893, and he is eligible for parole only after serving one-half of his sentence, R.S. 15:574.4. Accordingly, we vacate Walter's sentence for conviction of aggravated burglary and resentence him to 15 years at hard labor without benefit of probation or suspension of sentence, the first half of the sentence without benefit of parole.
In all other respects, Walter's convictions and sentence are affirmed.
CONVICTIONS AFFIRMED; SENTENCE AFFIRMED AS AMENDED; REMANDED.