| STATE OF LOUISIANA | * | NO. 2024-KA-0420 |
|---|---|---|
| VERSUS | * | |
| | | COURT OF APPEAL |
| SULLIVAN WALTER | * | |
| | | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |

* * * * * * *

APPEAL FROM
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 557-339, SECTION "D"
Judge Kimya M. Holmes
* * * * * *
**Chief Judge Roland L. Belsome**
* * * * * *

(Court composed of Chief Judge Roland L. Belsome, Judge Daniel L. Dysart, Judge Rosemary Ledet, Judge Sandra Cabrina Jenkins, Judge Nakisha Ervin-Knott)

**DYSART, J., DISSENTS**
**LEDET, J., DISSENTS WITH REASONS**

Liz Murrill
LOUISIANA ATTORNEY GENERAL
J. Bryant Clark, Jr.
J. Taylor Gray
Stephanie May Bruno
ASSISTANTS LOUISIANA ATTORNEY GENERAL
Louisiana Department of Justice
P.O. Box 94005
Baton Rouge, Louisiana 70804

      COUNSEL FOR THE STATE OF LOUISIANA/APPELLANT

Christopher J. Murell
Meghan Matt
MURELL LAW FIRM
2831 St. Claude Ave.
New Orleans, LA 70117

David B. Shanies   PRO HAC VICE
DAVID B. SHANIES LAW OFFICE
110 West 40th Street, Tenth Floor
New York, NY 10018

      COUNSEL FOR DEFENDANT/APPELLEE

**JUDGMENT AMENDED AND AFFIRMED AS AMENDED**
**April 29, 2025**

*RLB*
*SCJ*
*NEK*

The State through the Attorney General's Office ("State") appeals the trial court's judgment that granted Sullivan Walter's petition for compensation pursuant to the Louisiana Wrongful Conviction Compensation Statute, La. R.S. 15:572.8, and awarded him the statutory maximum of $480,000 from the Louisiana Wrongful Conviction Compensation Fund. For the reasons that follow, we amend the judgment to reflect that the awards of compensation are subject to any credit the State is entitled pursuant to La. R.S. 15:572.8(H)(5) and, as amended, affirm the judgment.

## *FACTUAL BACKGROUND AND PROCEDURAL HISTORY*

This wrongful conviction compensation case arises out of a May 10, 1986 midnight home invasion and rape of L.S.[1], a single mother living in her home with her eight-year old son sleeping in the next room. L.S. described her attacker as a young, lean black man with greasy hair wearing a blue baseball cap and a yellow

---

[1] The victim is referred to by her initials pursuant to La. R.S. 46:1844(W).

1

rag around his face to mask his appearance. After the man left, L.S. dressed in shorts and a shirt while waiting for the police to arrive.

The police took L.S. to the hospital that night for a sexual assault exam. The examination indicated the presence of seminal fluid near the victim's genital area. Internal and external vaginal swabs were collected as well as the victim's shorts and shirt.

On May 12, 1986, Patricia Daniels ("Ms. Daniels"), a medical technologist with the Orleans Parish Coroner's Office, tested the samples from the rape kit and prepared a report (the "Daniels Report"). The Daniels Report indicated that L.S.'s blood type was "O" and that testing of the internal vaginal swabs identified "no blood substances."

On May 13, 1986, Harry O'Neal[2] ("Mr. O'Neal"), a New Orleans Police Department ("NOPD") criminalist and DNA analyst, tested the stains on L.S.'s clothing. The results of his testing are reflected in his report (the "O'Neal Report") and state that stains on the victim's shorts tested positive for seminal fluid and spermatozoa, and "no secretor activity."

Around six weeks after the crime, 17-year old Sullivan Walter ("Mr. Walter") was arrested for an unrelated non-violent burglary. Believing Mr. Walter resembled the description of L.S.'s attacker, a NOPD officer informed the detective investigating L.S.'s rape. Mr. Walter's photo was presented in a photo array for L.S., who identified him as her attacker. Mr. Walter was subsequently

---

[2] Mr. O'Neal's name appears spelled two different ways in the record. We adhere to the spelling of his name as reflected in his laboratory reports.

charged with (1) one count of forcible rape; (2) one count of aggravated burglary; and (3) two counts of aggravated crime against nature.

In December 1986, a one-day trial was held. On the morning of trial, prosecutors provided Mr. Walter, for the first time, a copy of the O'Neal Report. Although the report was not admitted into evidence, Mr. O'Neal was accepted as an expert in bodily fluid analysis and testified to the contents of his report. Mr. O'Neal explained:

> The secretor test is conducted to determine a person's blood type from his bodily secretions….In other words, their saliva or seminal fluid…In this particular case, examination of seminal fluid revealed no secretor activity which would indicate that the individual who left the seminal fluid stains was a non-secretor. In other words, they did not secrete their blood type.

Additionally, while Ms. Daniels did not testify at trial, her report was admitted into evidence by stipulation. The jury found Mr. Walter guilty as charged. Mr. Walter was sentenced to 35 years as a multiple offender on the forcible rape conviction and sentenced to 15 years imprisonment on each of the other convictions, with all sentences to run concurrently with each other.[3]

In his first appeal, Mr. Walter argued that the State's untimely production of the O'Neal Report deprived him of constitutional due process and violated the rules of discovery. The serology test results, reflected in the O'Neal Report, showed that the perpetrator was a non-secretor. He argued that had he known of the test results earlier, he could have conducted tests to exonerate himself by proving that he is a secretor. This Court affirmed Mr. Walter's convictions,

---

[3] The trial court's sentencing disposition is absent from the record. Details of his sentence were observed in *State v. Walter*, 514 So.2d 620 (La. App. 4th Cir. 1987) ("*Walter One*").

subject to his right to move for a new trial and present evidence of his secretor status.

On remand, Mr. Walter's blood and saliva were tested. Mr. O'Neal conducted the tests and his January 1988 report indicated that Mr. Walter was Blood Type B, and the saliva sample revealed Blood Type B secretor activity. Mr. Walter then filed a motion for new trial.

At the April 1988 hearing on the motion for new trial, Mr. O'Neal was the sole witness. He stated that he could not exclude Mr. Walter as the perpetrator of the crime based on the sample stain he tested, despite having testified at trial that the perpetrator was a non-secretor. The trial court denied the motion for new trial, and this Court affirmed on remand from the Supreme Court.[4]

In August 2022, the Orleans Parish District Attorney ("DA") and Mr. Walter filed a joint motion to vacate Mr. Walter's convictions pursuant to La. C.Cr. P. art. 926.2(B), alleging that Mr. Walter is factually innocent of the offenses for which he was convicted. Mr. Walter submitted the report from DNA expert, Alan Keel, who reviewed the records and serological reports in this case. The joint motion was based on the serological evidence showing that the perpetrator was a non-secretor, while Mr. Walter is a secretor, thereby excluding him as the perpetrator. Following a hearing, the trial court granted the motion and vacated Mr. Walter's convictions and ordered his immediate release as to those crimes.

In March 2023, Mr. Walter filed a petition for compensation for wrongful

---

[4] *State v. Walter*, 94-2221(La. App. 4 Cir. 7/23/97), 698 So.2d 439 (*"Walter Three"*).

conviction and imprisonment pursuant to La. R.S. 15:572.8. The State through the Attorney General's Office opposed the petition on the basis that Mr. Walter cannot prove by clear and convincing evidence that he is factually innocent. Following an evidentiary hearing, the trial court rendered judgment in Mr. Walter's favor. The trial court found the evidence collected from the 1986 rape revealed no group type secretions and thus eliminated Mr. Walter as the rapist of L.S. The trial court awarded Mr. Walter the statutory maximum of $480,000 from the Louisiana Wrongful Conviction Compensation Fund in connection with his time served in Docket No. 316-973.[5] The State's appeal to this Court followed.

## *DISCUSSION*

On appeal, the main issue is whether Mr. Walter proved by clear and convincing evidence that he is factually innocent of the crimes for which he was convicted pursuant to La. R.S. 15:572.8. In opposing the State's appeal, Mr. Walter contends that he did and, as a threshold matter, argues the State is precluded from asserting otherwise under the doctrines of *res judicata* and judicial confession. We address this subsidiary issue first before turning to the principal question of whether Mr. Walter met his burden of proving he is factually innocent.

### *Res Judicata* and Judicial Confession Doctrines

Mr. Walter contends that *res judicata* and the judicial confession doctrine bar the State from challenging his factual innocence. In support of his contention,

---

[5] According to the August 2022 joint motion to vacate, Mr. Walter pled guilty to two unrelated simple burglary charges. Defense confirmed the February and July 1986 arrests for simple burglary at the 2024 compensation hearing; however, the record contains no proof of those guilty pleas or the sentencing disposition.

Mr. Walter argues that the State is bound by the underlying criminal judgment, to which it consented and which found Mr. Walter to be factually innocent, as well as by the factual admissions made in the joint motion that preceded the entry of that judgment.

*Res judicata* only applies to matters "actually litigated and determined." La. R.S. 13:4231(3). An issue is not litigated if it was not "contested by the parties." *In re Keaty*, 397 F.3d 264, 272 (5th Cir. 2005). Here, a determination of Mr. Walter's factual innocence was never actually litigated in the post-conviction relief proceedings; rather, it was jointly admitted by the DA and Mr. Walter. Thus, *res judicata* does not apply. *See Smith ex rel. Smith v. State*, 08-1349, *unpub.,* (La. App. 4 Cir. 5/6/09), 2009 WL 8688916 (rejecting argument based on *res judicata* that evidence of juvenile court's finding of "innocence" precluded the State from challenging a wrongful conviction claim).

Additionally, a judicial confession is "a declaration made by a party in a judicial proceeding. That confession constitutes full proof against the party who made it." La. C.C. art. 1853. "A stipulation has the effect of a judicial admission or confession which binds all parties and the court." *Young v. Martinez*, 98-674, p. 4 (La. App. 5 Cir. 11/25/98), 722 So.2d 1143, 1145. "A judicial confession is binding on the court and must be applied in the case in which it is made." *Herbert v. Richard*, 15-8, p. 6 (La. App. 3 Cir. 6/17/15), 166 So.3d 1265, 1272 (citation omitted).

The judicial confession doctrine does not apply. This appeal arises in a

separate civil proceeding wherein the parties appear before the court in different capacities. In this compensation action, *Sullivan Walter v. State of Louisiana* (Docket No. 557-339)[6], the State is a civil defendant, and pursuant to statute, the Attorney General is required to represent the State in such matters. *See* La. R.S. 15:572.8(E). For these reasons, we find no merit to Mr. Walter's preclusion argument.

### *Standard of Review*

Appellate courts review a wrongful conviction compensation case for manifest error.[7] *State v. Ruano*, 19-0709, p. 4 (La. App. 4 Cir. 3/4/19), 294 So.3d 44, 46 (citation omitted). "The issue is not whether the trial court's findings are right or wrong, but whether they are reasonable on the record as a whole." *State v. Ford*, 50,525, p. 6 (La. App. 2 Cir. 5/18/16), 193 So.3d 1242, 1247 (citations omitted). Longstanding jurisprudence requires appellate courts to give great deference to a trier of fact's factual findings based on credibility judgments. *Rosell v. ESCO*, 549 So.2d 840, 845 (La. 1989); *Stobart v. State, Dep't of Transp. & Dev.*, 617 So.2d 880, 882 (La. 1993).

### *Factual Innocence Under La. R.S. 15:572.8*

A petitioner is entitled to compensation under La. R.S. 15:572.8 upon proving: "(1) The conviction of the petitioner has been reversed or vacated; and (2)

---

[6] The caption of this civil case is incorrectly styled as *State v. Sullivan Walter*, which was the caption of the underlying criminal case with designated Docket No. 316-973.

[7] The State asserts that a *de novo* standard of review should be applied because the trial court's reasons for judgment contains manifest errors of fact. Given appeals are taken from judgments and not written reasons for judgment, we find no reason to review this case *de novo*. *Greater New Orleans Expressway Comm'n v. Olivier*, 02-2795, p. 3 (La. 11/18/03), 860 So.2d 22, 24 (internal citations omitted).

7

The petitioner has proved by clear and convincing scientific or non-scientific evidence that he is factually innocent of the crime for which he was convicted."[8] La. R.S. 15:572.8(A). Subsection (B) defines factual innocence to mean that "the petitioner did not commit the crime for which he was convicted and incarcerated nor did he commit any crime based upon the same set of facts used in his original conviction." La. R.S. 15:572.8(B).

Examining La. R.S. 15:572.8, the Fifth Circuit identified three methods by which a petitioner may prove that he did not commit a crime:

> First, the petitioner may produce probative, affirmative evidence that another person perpetrated the crime […] Second, the petitioner may point out the absence of evidence establishing him as the perpetrator of the crime or attempt to cast into doubt the prosecution's evidence […] Third, the petitioner may provide evidence of absence or evidence that excludes him as the perpetrator of the crime. Such evidence, as contemplated by the statute, may be scientific such as DNA evidence…or non-scientific evidence, such as alibi testimony…or some other kind of physical evidence, that may directly or circumstantially exclude the petitioner as the perpetrator of the crime.

*Alexander*, 22-12, pp. 18-20, 367 So.3d at 881-82.

The trial court rightly observed that at the "heart of the matter" is the physical evidence collected reflecting non-secretor activity in the spermatozoa specimens collected from the vaginal swabs and victim's shorts. Mr. Walter has consistently maintained that he did not rape L.S. In support of his petition, Mr. Walter relies primarily on the third method outlined in *Alexander* to assert that the forensic evidence collected in the underlying case excludes him as the perpetrator

---

[8] The clear and convincing standard of proof is not "intended to decrease the likelihood of those wrongfully convicted and imprisoned from receiving compensation, but rather as intended to decrease the likelihood that a person whose conviction has been reversed or vacated, but who has nevertheless involved in criminal activity, receives compensation." *State v. Alexander*, 22-12, p. 16 (La. App. 5 Cir. 6/21/23), 367 So.3d 867, 880.

of the crime.[9]  He avers that he could not have committed the rape of L.S. because he is a Group B blood secretor and the spermatozoa specimens collected and tested reveal they came from a non-secretor.  Opposing Mr. Walter's petition, the State claims that a conclusive determination cannot be made regarding the perpetrator's secretor status based on the stain on the victim's shorts; and therefore, Mr. Walter cannot be definitively excluded.

The focus of this case and the primary point of dispute concerns the forensic evidence collected from the victim's shorts and the testimony of Mr. O'Neal, who performed the testing.  The unequivocal testimony of Mr. Walter at the 1986 trial was that "the individual who left the seminal fluid stains was a non-secretor."

At the 1988 hearing on the motion for new trial, Mr. O'Neal testified that the January 1988 test results showed that Mr. Walter was a Group B secretor.  Mr. O'Neal testified that despite the stain on the victim's shorts showing no secretor activity, the test results alone are inconclusive as to whether the person who caused the stain is a non-secretor.  Mr. O'Neal identified factors that might explain the apparent discrepancy between his test results and Mr. Walter's secretor status.

On appeal, the State cites Mr. O'Neal's 1988 testimony positing potential explanations for the discrepancy, like sample size and stain concentration, to suggest that his trial testimony regarding the perpetrator's secretor status was anything but conclusive.  However, Mr. O'Neal testified at the motion for new trial that he did not recall Mr. Walter's case or what measures he took in 1986 to test the shorts stain.  Additionally, the prosecution never raised concerns about the reliability of the O'Neal Report or sought to retest the evidence while it was still in

---

[9] Mr. Walter contends that because the scientific evidence excludes him as the perpetrator of the crime it would necessarily follow that the evidence would also cast doubt on the prosecution's identification evidence.

its possession. Further, the record is devoid of any contemporaneous challenge to Mr. O'Neal's conclusions as testified to at the 1986 trial. Thus, there is nothing in the record to suggest that any of the scenarios Mr. O'Neal identified, which might otherwise call into doubt the accuracy of his trial testimony were present in this case.

At every relevant stage, the forensic evidence and testimony of Mr. O'Neal has eliminated Mr. Walter as the perpetrator. The unequivocal testimony of Mr. O'Neal at the 1986 trial was that "the individual who left the seminal fluid stains was a non-secretor."

Mr. O'Neal's expert opinion was based on his analysis of biological samples recovered from the victim's shorts she was wearing on the night of the assault. The reliability of the O'Neal Report was never questioned until it became clear, after Mr. Walter was convicted, that Mr. Walter is a Group B secretor, making it scientifically impossible for him to have left the seminal fluid recovered from victim and her clothing.

Nearly 40 years later, there is a suggestion that Mr. O'Neal required better samples to conclusively determine that the semen collected from the victim's shorts came from a non-secretor. However, Mr. O'Neal's original testimony has never been contradicted or withdrawn. In fact, as evidenced by his September 4, 2023 letter[10] to Mr. Walter's attorney, Mr. O'Neal has remained steadfast in his conclusion: "**Mr. Walter could not have produced the sample on the <u>material tested!</u>**" (emphasis in original).

Further, the accuracy of the Daniels Report has never been challenged. The

---

[10] Mr. O'Neal sent a letter via email to Mr. Walter's attorney on September 4, 2023, after receiving notice of a federal civil rights lawsuit involving the prosecution of Mr. Walter's criminal case and which named Mr. O'Neal as a defendant.

Daniels Report tested the vaginal swabs taken from L.S. shortly after the rape occurred and determined that the swabs tested positive for seminal fluid, and no blood substances were identified. According to Mr. O'Neal's explanation of secretor testing, the Daniels Report would indicate no secretor activity was detected from the vaginal swabs Ms. Daniels tested.

At the compensation hearing, Alan Keel acknowledged that there were multiple possibilities as to why the shorts Mr. O'Neal tested yielded no secretor activity. Even so, he opined that given the information police gathered in the course of their investigation, the two independent tests performed likely produced accurate results. In light of both the O'Neal Report and the Daniels Report, Mr. Keel opined that Mr. Walter could not have been the perpetrator.

Mr. O'Neal's testimony, coupled with the corroborating findings of Ms. Daniels—whose independent analysis of the vaginal swabs supports Mr. O'Neal's conclusion that the semen came from a non-secretor—renders the suggestion that Mr. Walter, a Group B secretor, committed this heinous act scientifically untenable.

On appeal, this Court is asked to determine whether Mr. Walter has presented clear and convincing evidence of his factual innocence to support his petition for compensation. In reviewing for manifest error, our role is not to decide whether we would have reached the same conclusion, but rather to determine whether the trial court's judgment was reasonable based on the record as a whole. *Ruano*, 19-0709, p. 4, 294 So.3d at 46; *Ford*, 50,525, p. 8, 193 So.3d at 1248-49 (explaining "the entirety of the evidence, whether admitted at the underlying trial or excluded, is properly considered in the determination of factual innocence…").

The evidence supporting the trial court's ruling rests principally on the

11

O'Neal Report, which found no secretor activity in the sample, and the Daniels Report, which corroborated those findings by detecting no blood group substances. This evidence was further reinforced by Mr. O'Neal's testimony at the original trial and the 2024 compensation hearing, as well as his 2023 letter to defense counsel, in which he expressly stated that Mr. Walter could not have produced the sample he tested. Together, this evidence supports the trial court's conclusion that because the true perpetrator of this horrific crime was a non-secretor, Mr. Walter's "biological status as secretor necessarily eliminates him as the assailant."

We find no manifest error in the trial court's determination that Mr. Walter met his burden and is entitled to compensation. The trial court awarded the statutory maximum in connection with Mr. Walter's convictions in this case. However, it is unclear whether the State is entitled to a credit. The joint motion to vacate reflects Mr. Walter pled guilty to two unrelated burglary charges, and while the defense confirmed the arrests at the compensation hearing, the record does not include the sentencing dispositions. As a result, it cannot be determined from the record whether the State is entitled to a credit for any other time Mr. Walter may have served; therefore, we amend the trial court's May 17, 2024 judgment to reflect that the awards of compensation are subject to any credit the State is entitled pursuant to La. R.S. 15:572.8(H)(5).

### CONCLUSION

On appeal, we find no manifest error in the trial court's finding that Mr. Walter proved by clear and convincing evidence that he is factually innocent and entitled to compensation under La. R.S. 15:572.8. Our arrival at this conclusion does not diminish the gravity of the crime, the trauma endured by the victim, or the good-faith prosecution based on the evidence available at the time. It also does not

12

change the undeniable scientific fact that Mr. Walter, who spent 36 years behind bars—more than two-thirds of his life—could not have been the perpetrator. For these reasons, the trial court's judgment is amended to indicate that the awards of compensation are subject to any credit the State is entitled pursuant to La. R.S. 15:572.8(H)(5). As amended, it is affirmed.

**JUDGMENT AMENDED AND AFFIRMED AS AMENDED**